# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CLAYTON ROBINSON, JR.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 08 C 3105 |
| ) | |
| **MICHAEL J. ASTRUE,** ) | Judge Nan R. Nolan |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clayton Robinson, Jr. claims that he is disabled because he has no use of his right arm. He filed this action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. § 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and have now filed cross-motions for summary judgment. For the reasons set forth here, Mr. Robinson's motion is granted, and the Commissioner's motion is denied.

## PROCEDURAL HISTORY

Mr. Robinson applied for SSI on February 24, 2006, claiming that he became disabled on January 1, 2005 due to an injured right arm. (R. 50.) The application was denied initially on May 25, 2006, and again on reconsideration on July 28, 2006. (R. 74-78, 80-83.) Mr. Robinson appealed the decision and requested an administrative hearing, which was held on August 15, 2007. (R. 15-30.) On February 26, 2008, the Administrative Law Judge ("ALJ") denied Mr. Robinson's claim for benefits. (R. 50-56.) The ALJ found that Mr. Robinson's right arm and hand problems are severe impairments, but that he retains the residual functional capacity to perform his past work as a chicken farm laborer. (R. 53, 56.) Mr. Robinson now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

## FACTUAL BACKGROUND

Mr. Robinson was born on July 12, 1948 and, at 59, was a person of "advanced age" at the time of the hearing before the ALJ. (R. 18, 39.) He has an eighth grade education, but cannot read, write or drive a car. (R. 19, 22, 28.) The current application for benefits is Mr. Robinson's twelfth since approximately 1983. (R. 50, 187-90.)

**A.     Medical History**

**1.      1977 through 1987**

Mr. Robinson injured his right arm on June 25, 1977 when he punched it through a glass window. (R. 246, 336.) He was admitted to the hospital with extensive laceration of the arm and, on June 29, 1977, he underwent surgery to repair the right brachial artery. (R. 245-70.) Mr. Robinson next saw a physician on December 17, 1985 for an x-ray of his right arm. The radiologist, Dr. A. Kencos, found no evidence of fracture or dislocation, but Mr. Robinson did exhibit osteoarthritic changes in his elbow. Dr. Kencos observed that the right hand was in a "semi flexion contraction position" with "deformity of the 5th metacarpal due to old fracture." (R. 275.)

On December 24, 1985, Dr. Mehroo M. Patel conducted an Arthritic Report of Mr. Robinson for the Bureau of Disability Determination Services ("DDS"). Dr. Patel noted that Mr. Robinson had chronic arthritis and "flexion contracture deformity" in his right hand due to "old trauma," and opined that he was "severely limited" in his ability to lift, carry and handle objects with his right hand. (R. 279-80.) At the bottom of his report, Dr. Patel stated: "p.s. [patient] has cardiac murmur, bradycardia and [left] vent[rical] hypertrophy." (R. 280.)

A few weeks later, on January 17, 1986, Dr. E. W. Donelan conducted a Residual Functional Capacity Assessment of Mr. Robinson on behalf of DDS. Dr. Donelan found that Mr. Robinson could frequently lift 10 pounds but never lift more than 20 pounds. He could also sit, stand and/or walk for six hours in an eight-hour workday; occasionally climb, balance, stoop, kneel and crouch, but never crawl; and never push or pull with his right upper extremity. (R. 283.) Dr. Donelan stated

that Mr. Robinson was "unable to do fine and/or gross movements" with, and had "no effective use" of, his right upper extremity. (R. 284.) At the request of DDS, Dr. Jose Gonzalez also conducted a Residual Functional Capacity Assessment of Mr. Robinson on April 2, 1986. Dr. Gonzalez agreed that Mr. Robinson could frequently lift 10 pounds; never lift more than 20 pounds; and stand and/or walk for six hours in an eight-hour workday. (R. 288.)

On September 5, 1986, Dr. Robert D. Keagy conducted an Arthritic Report of Mr. Robinson for DDS. (R. 292-94.) Dr. Keagy reported that Mr. Robinson had "an intrinsic minus hand on the right with perception deficits on the palmar side, both radially and ulnarly secondary to brachial plexus injury in the axilla and median and ulnar nerve lesions in the proximal forearm." (R. 292.) Dr. Keagy estimated that Mr. Robinson had "a loss of 75% of the use of the right upper extremity." He also observed that despite "considerable motor capability" in the right hand, Mr. Robinson, like most ordinary people, mostly used his "relatively normal" left hand. (R. 293-94.)

Mr. Robinson underwent a consultative examination with Dr. Marvin W. Aren on October 23, 1986. (R. 296-98.) Mr. Robinson told Dr. Aren that he lived alone at that time and cared for his own household needs. (R. 296.) Dr. Aren observed a 50% restriction in range of motion in Mr. Robinson's right upper extremity, and diagnosed "[n]euromuscular defect of the right upper extremity - post-traumatic." (R. 297-98.) Dr. Aren also noted some degenerative changes of the cervical spine. (R. 298.)

On December 3, 1986, Dr. Albert T. Kwedar evaluated Mr. Robinson's residual functional capacity. (R. 301-03.) Dr. Kwedar found Mr. Robinson capable of frequently lifting 10 pounds; never lifting more than 20 pounds; and standing and/or walking for six hours in an eight-hour workday. (R. 301.) In addition to a 50% restriction in right upper extremity movement, Dr. Kwedar also noted the existence of backache and spondylosis. (R. 302.)

Mr. Robinson saw Dr. Keagy again a few months later on May 6, 1987. (R. 305-06.) Dr. Keagy reported no change in Mr. Robinson's condition and opined that he was "only able to do the

3

crudest of grasping with his right hand." In Dr. Keagy's view, Mr. Robinson would "only be able to move an object on a table" and could not perform any type of fine manipulation with the right hand. (R. 305.) Approximately three months later on July 30, 1987, Dr. Kwedar reiterated his conclusion that Mr. Robinson was capable of frequently lifting 10 pounds; never lifting more than 20 pounds; and standing and/or walking for six hours in an eight-hour workday. Dr. Kwedar also added that Mr. Robinson could use his right upper extremity only for support, and should be treated as a one-armed person except for purposes of crawling. (R. 308.)

### 2. 2006 to Present

There is no record of any further medical treatment or evaluation until nearly 19 years later. On April 19, 2006, Mr. Robinson saw Dr. Alexander Panagos for an Internal Medicine Consultative Examination in connection with his most recent application for benefits. (R. 336-39.) Mr. Robinson told Dr. Panagos that he could lift 20 to 30 pounds "without difficulty," and perform fine and gross motor movements. (R. 336.) Dr. Panagos observed that Mr. Robinson's hygiene, cooperation and attitude were all good, but he performed poorly in the areas of orientation, memory and intellectual functioning. (R. 337, 339.) Mr. Robinson exhibited finger squeeze strength of 4+/5 with the right hand and 5/5 with the left hand, as well as motor strength of 4/5 in his right upper arm versus his right leg. (R. 338, 339.) Dr. Panagos diagnosed paraesthesias and weakness of the right upper extremity; left shoulder pain; dizziness and headache of unknown etiology; illiteracy; atypical chest pain; depression and nervousness; and chronic pain of both lower extremities. (R. 339.)

Dr. John W. O'Donnell conducted a psychiatric examination of Mr. Robinson on April 20, 2006. (R. 340-45.) Mr. Robinson was well-groomed and cooperative, and he told Dr. O'Donnell that he does his own laundry and helps with the dusting. (R. 340-41.) Dr. O'Donnell diagnosed alcohol abuse in full sustained remission; depressive disorder; and personality disorder. (R. 344-45.) Shortly thereafter on May 22, 2006, Erika B. Altman, Ph.D, performed a Psychiatric Review Technique of Mr. Robinson on behalf of DDS. (R. 348-60.) Dr. Altman found Mr. Robinson to be

4

cooperative, friendly and well-groomed at the examination. (R. 360.) She stated that Mr. Robinson suffered from depressive disorder but found him only mildly limited in his activities of daily living and in maintaining concentration, persistence or pace. (R. 351, 358.)

B.   Mr. Robinson's Testimony

At the hearing, Mr. Robinson showed his right hand to the ALJ, who described it as being "in a claw fashion" with the "second, third, and fourth digits in particular . . . markedly bent at the second flange." The ALJ further observed a seven-inch "jagged keloid scar that runs the length of [Mr. Robinson's] inner forearm." (R. 23.) During the course of his testimony, Mr. Robinson stated that he served time in prison for aggravated battery between 1996 and 2001. While incarcerated, he worked putting bags into the garbage at the commissary, and pouring water into cups in the kitchen. (R. 28-29.) Most recently, Mr. Robinson worked for Wayne Farms in Tula, Mississippi as a "floor man" assigned to "pick up stuff off the floor." (R. 19, 20.) On his March 8, 2006 Disability Report - Adult, Mr. Robinson stated that he spent his days picking up chickens and putting them in a bin, which involved lifting up to 10 pounds and carrying the weight a distance of five to 20 feet. (R. 197.) At the hearing, however, he testified that most of the time he simply used a floor squeegee to push water down a drain. (R. 21.) Mr. Robinson claimed that he was laid off because "the work got too heavy" for him and the company discovered his injured arm. (R. 19, 21.) He also stated, however, that farm personnel did not explain the reason for his layoff. (R. 34.)

Mr. Robinson testified that he cannot pick up or grab a cup, pick up a coin from the table, or button his shirt with his right hand. He can, however, hold a cup in his right hand. (R. 23, 24.) He reported no improvement in his right arm in the previous few years and stated that he cannot lift a gallon of milk with the right hand. (R. 25, 27.)

In response to testimony from the vocational expert, Mr. Robinson told the ALJ that his co-workers helped him perform his job by picking up buckets and emptying them into a dumpster. He also explained that the job requires two people; one person handed up the bucket to a second

5

person on a small ladder who would pour the contents into the dumpster. (R. 35-36.) Despite working at the farm for over a year, Mr. Robinson stated that the job required the use of two good hands. (R. 36.)

**C.  Vocational Expert Testimony**

William Newman testified at the hearing as a vocational expert ("VE"). The VE described chicken farm labor as medium work pursuant to the Dictionary of Occupational Titles, and opined that it usually requires the use of both hands. The VE also stated, however, that there was no evidence in the record that Wayne Farms extended Mr. Robinson any special accommodation, and that as Mr. Robinson performed his job, it fell within the light work range. (R. 33.)

**D.  The ALJ's Decision**

The ALJ found that Mr. Robinson's "status post 1977 right brachial plexus repair with suturing of the muscles, arteries, veins and nerves in the proximal forearm" is a severe impairment that does not, however, meet or equal one of the impairments listed in the Social Security Regulations. (R. 52, 53.) The ALJ determined that Mr. Robinson has the residual functional capacity ("RFC") to perform a full range of light work, noting that Mr. Robinson told Dr. Panagos in April 2006 that he is capable of lifting and carrying 20 to 30 pounds without difficulty. (R. 54, 55.) The ALJ also noted that Mr. Robinson worked as a chicken farm laborer throughout 2004 and into 2005, earning well in excess of the amount required for presumptive substantial gainful activity ("SGA"). (R. 55.) As for Mr. Robinson's specific duties on the chicken farm, the ALJ acknowledged that the work normally is classified as medium and unskilled and requires the use of two hands, but he accepted the VE's testimony that as Mr. Robinson performed the work, it was light and unskilled. The ALJ found Mr. Robinson capable of performing his past relevant work "as actually performed" and, thus, not under a disability.

In reaching this conclusion, the ALJ rejected Mr. Robinson's claims of additional impairments, such as left upper arm and right leg pain; dizziness; migraine headaches; cardiac

murmur; bradycardia; and left ventricular hypertrophy, finding no medical evidence to support these conditions. (R. 52.) The ALJ also agreed with Dr. O'Donnell that Mr. Robinson has no severe mental impairment. (R. 53.) With respect to Mr. Robinson's testimony regarding the severity of his impairment, the ALJ found him not entirely credible, noting his work history on the farm and during his five-year incarceration for aggravated battery. (R. 54-55.)

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the court may not engage in its own analysis of whether Mr. Robinson is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* (citation omitted). The court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004).

Although this court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (internal citations omitted). The court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### B. Five-Step Inquiry

To recover SSI under Title XVI of the Social Security Act, a claimant must establish that he is disabled within the meaning of the Act. 42 U.S.C. § 1382c(a)(3); *Keener v. Astrue*, No. 06-CV-0928-MJR, 2008 WL 687132, at *1 (S.D. Ill. Mar. 10, 2008); *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001). A person is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905. In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 416.920; *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**C.     Analysis**

Mr. Robinson raises two main arguments in support of his request for a reversal and remand: (1) the ALJ erred by giving controlling weight to Dr. Panagos's report; and (2) the ALJ violated SSR 82-62 in finding Mr. Robinson capable of returning to his past work. The court addresses each in turn.

**1. Dr. Panagos's Report**

Mr. Robinson argues that the ALJ should have given controlling weight to the opinions of his treating physicians, who all found that he has little or no use of his right upper extremity. (Pl. Mem., at 6, 7.) A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). A claimant is not disabled, however, simply because his treating physician says so. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining the weight to give the opinion, including: the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the degree to which the opinion is supported by medical signs and laboratory findings, the consistency of the opinion with the record as a whole, and whether the opinion was from a specialist. 20 C.F.R. § 404.1527(d)(2)-(5).

Mr. Robinson concedes that he did not have "either a lengthy relationship or frequent examinations by any of the physicians of record." (Pl. Mem., at 6.) He argues, however, that the state agency physicians all have observed marked deformity in his right arm that supports a finding of disability. To be sure, several state agency physicians opined between 1985 and 1987 that Mr. Robinson has extremely limited use of his right arm. For example, Dr. Donelan found Mr. Robinson unable to perform fine and/or gross movements with his right arm, and Dr. Keagy estimated a 75% loss of function in that extremity. Dr. Kwedar went one step further and opined that Mr. Robinson should be treated as a one-armed person except for purposes of crawling.

The ALJ acknowledged all of these reports but disagreed that they support a conclusion that Mr. Robinson is restricted in his ability to perform light work. The ALJ stressed that during Mr. Robinson's most recent medical examination in 2006, he admitted to Dr. Panagos that he is able to lift and carry 20 to 30 pounds "without difficulty." (R. 55, 336.) In addition, Dr. Panagos observed

9

that Mr. Robinson exhibited finger squeeze strength of 4+/5 with the right hand and 5/5 with the left hand, and reported that Mr. Robinson is "able to perform fine and gross motor movements." (R. 55, 336, 339.) Notably, long after the state agency physicians found Mr. Robinson to be effectively a one-armed person, he demonstrated an ability to work in a prison commissary and kitchen from 1996 to 2001, and as a chicken farm laborer for more than a year throughout 2004 and into 2005. (R. 55.) This is consistent with Dr. Panagos's most recent assessment. On these facts, the ALJ's decision to weigh Dr. Panagos's report more heavily than the state agency reports from 1985, 1986 and 1987 is supported by substantial evidence. *See Young*, 362 F.3d at 1001 ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do. . . . And we may not re-weigh the evidence.")

Mr. Robinson argues that the ALJ should have credited his more recent testimony that he cannot lift even a gallon of milk. (Pl. Mem., at 8.) The ALJ reasonably found this assertion "not entirely credible," however, based on the fact that Mr. Robinson told Dr. Panagos that he can lift and carry 20 to 30 pounds "without difficulty." (R. 55, 336.) As the Seventh Circuit recently held, "[i]t [i]s well within the ALJ's authority to disregard [the claimant's] testimony because it conflicted with what []he told [the doctor]." *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008).

Mr. Robinson also notes his testimony that the work at the chicken farm "got too heavy and I couldn't pick it up" anymore. (R. 20; Pl. Mem., at 2.) The ALJ concluded, however, that Mr. Robinson's "right upper extremity restriction is no worse now than it was" before he started working. (R. 55.) Indeed, nothing in the record reflects any significant medical change from 1987 to the date Mr. Robinson started working full-time in 2004, or after he was laid off. (R. 55.) The ALJ provided specific reasons for his credibility finding and was not "patently wrong" in his assessment. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). *See* also SSR 96-7p.

The court does agree with Mr. Robinson that the ALJ erred in stating that Mr. Robinson's incarceration for aggravated battery indicates either that he retains substantial functional use of his right arm, or that he "has compensated adequately with the non-dominant left upper extremity." (R. 55.) In the court's view, Mr. Robinson's apparent ability to injure someone for purposes of an aggravated battery charge is not evidence that he is able to use his right arm to perform functional tasks. Nevertheless, the error was harmless. *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) ("[T]he doctrine of harmless error . . . is fully applicable to judicial review of administrative decisions.") Even without considering the aggravated battery issue, the ALJ has articulated substantial evidence supporting his conclusion that Mr. Robinson is capable of performing light work consistent with Dr. Panagos's report. *Bacidore v. Barnhart*, No. 01 C 4874, 2002 WL 1906667, at *10 (N.D. Ill. Aug. 19, 2002) ("Harmless errors are those that do not affect an ALJ's determination that a claimant is not entitled to benefits.")

### 2. Mr. Robinson's Past Work

Mr. Robinson next argues that the ALJ violated SSR 82-62 in concluding that he is capable of performing his past relevant work as a chicken farm laborer. SSR 82-62 mandates that in assessing whether an individual can perform past work, "an ALJ must obtain a detailed description of the work including information about strength, endurance, and mental demands when appropriate." *Kenefick v. Astrue*, 535 F. Supp. 2d 898, 909 (N.D. Ill. 2008). As the regulations explain, "[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." SSR 82-62. Past work constitutes relevant work experience for purposes of step four of the analysis when it (1) was done within the last 15 years; (2) lasted long enough for the claimant to learn to do the job; and (3) was substantial gainful activity. *Id.*; 20 C.F.R. § 404.1565(a).

The ALJ first confirmed that Mr. Robinson's work as a chicken farm laborer qualifies as "past relevant work." Mr. Robinson performed the job for more than a year throughout 2004 and into 2005, making average monthly earnings of $1,374. The ALJ is correct that this "is well in excess of presumptive substantial gainful activity." (R. 55.) *See* 20 C.F.R. § 404.1574(b). The ALJ acknowledged Mr. Robinson's testimony that he received help from co-workers in order to empty buckets into a dumpster, but he also noted that the VE found no evidence in the record of any sympathetic accommodations by the employer. (R. 55-56.) In addition, Mr. Robinson conceded that emptying the buckets is always a two-man job. (R. 35-36.) The ALJ's determination that Mr. Robinson's past work constituted SGA notwithstanding the alleged assistance he received from co-workers is supported by substantial evidence. *Cf.* 20 C.F.R. § 404.1573 (work done "under special conditions" may not be SGA); *Jones v. Shalala*, 21 F.3d 191, 192-93 (7th Cir. 1994) (noting the possibility that a claimant is earning a decent wage but not engaging in SGA because "his boss feels desperately sorry for him and is retaining him on the payroll even though he is incapable of working" or because he receives "extraordinary assistance" from "kindly fellow workers.")

The ALJ next discussed Mr. Robinson's testimony concerning the specific work he performed at the farm. Mr. Robinson was a "floor man" assigned to pick up things off the floor and put them into a bucket. Most of the time, however, he merely pushed a squeegee across the floor to move water into a drain. (R. 55.) The VE testified that a chicken farm laborer job is ordinarily classified as medium work requiring the use of two hands. As Mr. Robinson performed the job, however, it was light work. (R. 56.) Based on this distinction, the ALJ concluded that Mr. Robinson can still perform the laborer job "as actually performed." In reaching this conclusion, the ALJ found it significant that Mr. Robinson's testimony regarding the amount of weight he had to carry ("heavy" buckets) differed from his written work history regarding that weight (10-pound buckets). (R. 31-32, 56, 197.)

12

In the court's view, it is not entirely clear that Mr. Robinson's testimony regarding lifting "heavy" buckets is in fact inconsistent with his earlier written statement that he lifted buckets weighing 10 pounds. More problematic, however, is the fact that the ALJ did not provide any evidence – or ask the VE to provide evidence – regarding the number of medium-level, two-hand chicken farm laborer jobs that are available to a man who can only perform them at the light level and without full use of one hand. As the Seventh Circuit has explained, "[t]he issue is not whether the applicant for benefits can return to the precise job he held, which is hardly likely to have been kept open for him, but whether he can return to a 'job' he held that exists at other employers." *Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004). Notably, the ALJ did not ask the VE whether there are any chicken farm laborer jobs available that are classified as light. Nor did he go on to step five of the analysis and determine whether there are a significant number of light jobs in different industries available to someone with Mr. Robinson's RFC. On this record, the ALJ's conclusion that Mr. Robinson can perform his past relevant work is not supported by substantial evidence.

## **CONCLUSION**

For the reasons stated above, the ALJ's step four finding that Mr. Robinson is capable of performing his past relevant work is not supported by substantial evidence. Plaintiff's Motion for Summary Judgment [Doc. 16] is granted, and Defendant's Motion for Summary Judgment [Doc. 21] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Administration for further proceedings consistent with this opinion.

ENTER:

Dated: February 11, 2009

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge